IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ERON M. HATCHETT, | ) |
| | ) |
| *Plaintiff,* | ) No. 3:09-cv-00680 |
| | ) Judge Nixon |
| v. | ) Magistrate Judge Bryant |
| | ) |
| POTLUCK ENTERPRISES, INC., d/b/a | ) |
| ASHLEY FURNITURE HOMESTORES, | ) |
| | ) |
| *Defendant.* | ) |

## ORDER

Pending before the Court are Defendant Potluck Enterprises, Inc., d/b/a Ashley Furniture Homestores' ("Potluck") Motion for Summary Judgment ("Defendant's Motion") (Doc. No. 15) and Memorandum in Support (Doc. No. 16), as well as Plaintiff Eron M. Hatchett's Response and Counter Motion for Summary Judgment ("Plaintiff's Motion" or "Counter Motion") (Doc. No. 19). Defendant filed a Reply Brief in support of its Motion (Doc. No. 22), as well as a Response to the Counter Motion (Doc. No. 36), to which Plaintiff then filed a Reply (Doc. No. 37).

For the reasons stated below, Defendant's Motion is **GRANTED in part**, as to Plaintiff's disparate pay claim, and **DENIED in part**, as to Plaintiff's failure to promote and constructive discharge claims. Plaintiff's Motion is **DENIED**. As such, the case will proceed only on the grounds of failure to promote and constructive discharge.

I.  **BACKGROUND**

   *A. Factual Background[1]*

   Plaintiff Hatchett, an African-American man, applied to work at Potluck on August 19, 2006, and, after being interviewed by Potluck's then-Regional Manager Johnnie Hunter, he was hired as a Sales Manager. Hatchett had prior experience as a sales manager at Linens 'N Things, which was a comparable position to the one at Potluck, and one that Potluck valued in his work history. Potluck hired Hatchett in spite of a prior guilty plea for aggravated bank robbery with a handgun, which resulted in six years of incarceration. There is some dispute as to whether Potluck's owners, Tony Gallatin and Dan Parrish, were concerned about the conviction at the time Hatchett was hired—although Potluck asserts that Gallatin and Parrish expressed concern about the conviction, Hatchett has alleged that the issue never came up until much later in Hatchett's employment. Hatchett began working for Potluck in September of 2006 at a salary of $40,000 plus bonuses, which was increased to $45,000 starting in January of 2008.

   In his capacity as Sales Manager, initially at Potluck's Murfreesboro store, Hatchett opened and closed the store (such that he held store keys), managed the store's salespeople, and generally oversaw sales in the store. This position was one notch below the position of Store Manager, the highest position in a given store. Store Managers earned at least $60,000 in compensation and would sometimes rotate between stores or be transferred to other stores based on Potluck's needs. While Hatchett held the Sales Manager position at the Murfreesboro store, there was no Store Manager above him assigned to that location—rather, he reported to Hunter, who floated between a number of stores. Hatchett asserts that while he worked in Defendant's

---

[1] All facts in this section, unless otherwise specified, are drawn from Plaintiff's Response to Defendant's Statement of Undisputed Material Facts (Doc. No. 20) and Defendant's Response to Plaintiff's Statement of Additional Material Facts (Doc. No. 33).

stores as a Sales Manager without a Store Manager above him, he was essentially filling the role of Store Manager at a lower salary; Defendant alleges that the Store Manager has more and different responsibilities from the Sales Manager (although the nature of these duties remains unclear to the Court), and is the "top interface" with customers—a "person in charge." After working at the Murfreesboro store, Hatchett worked as a Sales Manager from March to June of 2007 at the Brentwood/Cool Springs store, where there was also no Store Manager above him. (Doc. No. 19 at 5.) He had the same role at Defendant's Rivergate location from June to September of 2007, when Store Manager Tinker Covington left two weeks after Hatchett arrived. *Id.* Subsequently, Hatchett was a manager at Potluck's LaVergne warehouse from September to November of 2007, and then returned to the Brentwood store, where the Store Manager also resigned, and Hatchett worked there until April of 2008. *Id.* at 5-6. He then returned to the Murfreesboro store, where he says he managed the store part of the time along with Store Manager Sherry Cobb. *Id.* at 6. Defendant does not agree that Hatchett filled the role of a Store Manager during these times.

Hatchett's performance at Potluck was satisfactory, and he was never subjected to disciplinary action or written up for failing to perform well. During his time at Potluck, Hatchett requested several times to be promoted to Store Manager. These requests were denied, but at least seven non-African American individuals were hired as Store Managers during this time; subsequent to Hatchett's EEOC charge, two African-Americans have been hired as Store Managers. Potluck's managers have supplied several reasons as to why Hatchett was not promoted, including: that Hunter represented to Parrish and Gallatin that Hatchett was "not ready"; that Hatchett "performed unacceptably"; and, that Potluck did not want to hire someone as a Store Manager who had a felony conviction for a crime of dishonesty, such as Hatchett's

armed robbery. The latter reason was most explicitly supplied not in the depositions of Potluck's final decision-makers (Gallatin and Parrish), but in a subsequent affidavit submitted by Jason Seavers (Doc. No. 18-5 at 3)[2], the Regional Manager of Potluck starting toward the end of Hatchett's employment, who had reviewed his personnel file. Seavers also avers in the affidavit that no other Store Managers are convicted felons.

Hatchett, however, advances a different reason for Potluck's refusal to promote him: his race. Hunter, the former Regional Manager of Potluck who is now a Vice President of Ace Exterminating (where Hatchett now works), stated in his deposition that Parrish told him the following in conversation:

> "No, [Hatchett's] not the right color [to be Store Manager]. We need to lighten this store."
>
> "This store is too dark. We've got to lighten this store up. Customers who live in this area do not like shopping with this much darkness in here."
>
> "Sometimes it's better to hire the Mexicans because they work harder if you don't get them deported than it is to get black people because they'll steal."
>
> Following a Potluck Christmas party where an African-American employee performed a rap song on a karaoke machine: "That was way too ghetto and [the employee] needed to go."

(Hunter Dep. 205-06, 215, 218.) Hunter also stated that he told Hatchett that he would not be promoted because he was black based on his conversations with Parrish. *Id.* at 205. Among other things, Hatchett himself testified in his deposition that Hunter told him that Parrish said Hatchett would never "fit into the role [of Store Manager] because [he] is black" (Hatchett Dep. at 138-39), and that Parrish "did not believe in black GMs [General or Store Managers]" (*id.* at

---

[2] Plaintiff alleges in his Statement of Additional Material Facts that Seavers has perjured himself in this affidavit, apparently on the basis that other materials filed by Defendant in this action contradict it. (Doc. No. 33 at 2.) The Court sees no reason to dignify this inflammatory claim with discussion at this stage of the case, particularly given that no formal charge or complaint has been made against Seavers. Plaintiff's counsel is urged to adopt a more civil tone.

179). In response to Defendant's allegation that Hatchett's criminal past was the reason he was not promoted, Hatchett points out that Potluck has employed interior designer Ken Walls, who was convicted of felony vehicular manslaughter arising from a drunk driving incident but has been allowed to work without supervision (Defendant disputes this final point).

In response, Parrish has explicitly denied that he made the following statements: that Hatchett would not fit into the Store Manager role because he is black; that Hatchett was not the right color to be Store Manager; that Hatchett would never be promoted to Store Manager because he was black; and that he did not believe in black GM's. Defendant has also brought to the Court's attention a wage dispute between the company and Hunter, as well as Hunter's continued relationship with Hatchett at Ace. Defendant also points out that it adopted a discrimination and harassment policy and grievance procedure—one that Hatchett claims pertained only to sexual harassment—while Hatchett was employed by Potluck, but that he never made a complaint pursuant to the procedure.

In the fall of 2008, Potluck's sales decreased during the economic downturn. Seavers, charged with cutting costs and increasing sales, eliminated the position of Sales Manager, shifting Hatchett and the only other Sales Manager at the time, also an African-American, to a new Selling Manager position, which Hatchett accepted in January of 2009. As Selling Manager, Hatchett learned he would receive a salary of $6,000 plus commissions per year, down from $45,000 plus bonuses. At the time this change occurred, Hatchett claims that Potluck hired a new Store Manager, Lange Burge, who is white. While Hatchett alleges that he continued to perform the same duties he had as Sales Manager, Defendant claims that the Sales Manager duties were assumed by Store Managers and Customer Services Managers, and that the Selling

Manager position emphasized sales and customer service. Within a month, Hatchett left Potluck for Ace Exterminating.

Subsequently, Hatchett filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 10, 2009, and received a Notice of Right to Sue on June 24, 2009. (Doc. No. 1 at 2.) He then brought this action, alleging that Potluck discriminated against him on the basis of race by failing to promote him and by paying him disparate wages compared to non-protected employees, and that Potluck constructively discharging him. (Doc. No. 1.) The legal bases of this action are Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* [hereinafter *Title VII*], 42 U.S.C. § 1981, and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* [hereinafter *THRA*].

B. *Procedural Background*

Plaintiff received his Right to Sue Notice from the EEOC on June 24, 2009. (Doc. No. 1 at 2.) Plaintiff filed the Complaint in this case on July 27, 2009 (Doc. No. 1), and Defendant filed its Answer on September 28, 2009 (Doc. No. 6). On April 15, 2010, Defendant filed its Motion (Doc. No. 15), Memorandum in Support (Doc. No. 16), and Statement of Undisputed Material Facts (Doc. No. 17), as well as an Appendix of supporting documentation (Doc. No. 18). On June 1, 2010, Plaintiff filed his Counter Motion (Doc. No. 19), a Response to Defendant's Statement of Undisputed Material Facts and Statement of Additional Material Facts (Doc. No. 20), and supporting documentation (Doc. No. 21).

On June 11, 2010, Defendant filed its Reply Brief (Doc. No. 22), as well as Motions to Strike Defendant's filings of June 1 (Doc. Nos. 23 & 25) and supporting memoranda (Doc. Nos. 24 & 26). Plaintiff filed Responses to these Motions on June 14, 2010 (Doc. Nos. 27 & 28). After continuing pretrial conference and trial in this matter in an August 27, 2010 Order (Doc.

No. 29), the Court then denied both of Defendant's Motions to Strike on November 29, 2010, and ordered Defendant to file any responsive materials to Plaintiff's Counter Motion (Doc. No. 31). Defendant filed a Response to Plaintiff's Statement of Additional Material Facts on November 29, 2010 (Doc. No. 33). Subsequently, on November 30, 2010, the Court granted Defendant's request for an extension of time to submit filings (Doc. No. 34), and Defendant filed the Response to the Counter Motion on December 16, 2010 (Doc. No. 36). Plaintiff submitted a Reply on December 30, 2010 (Doc. No. 37).

## II. LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides in part that "the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The general thrust of the inquiry a court must perform in considering a motion for summary judgment is whether there is a need for trial, in that genuinely disputed factual matters must be put to the fact-finder because they might reasonably be resolved in either party's favor. *Anderson v. Liberty Lobby, Inc.*, 47 U.S. 242, 250 (1986). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48. The substantive law involved in the case will underscore which facts are material, and only disputes over outcome-determinative facts will bar a grant of summary judgment. *Id.* at 248.

Parties must support their allegations as to the existence or absence of a genuine dispute as to any material fact: Rule 56(c)(1)(A) allows parties to support their claims by citing to materials in the record; Rule 56(c)(1)(B) allows them to support their claims by showing that "the materials cited do not establish the absence or presence of a genuine dispute, or that an

adverse party cannot produce admissible evidence to support that fact." While the moving party bears the initial burden of proof for its motion, the party that opposes the motion has the burden to come forth with sufficient proof to support its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In ruling on a motion for summary judgment, the court must review the facts and reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Further, the Court will closely scrutinize the movant's papers while indulgently treating those of the opponent. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425, 427 (6th Cir. 1962) (citations omitted).

### III. ANALYSIS

Both parties have filed for summary judgment in this case. The Court will consider the parties' motions together as to each basis for relief Plaintiff has alleged. It should be noted from the outset that claims under Title VII and the THRA are analyzed identically. *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008).

#### A. *Plaintiff's Failure to Promote Claim*

The Sixth Circuit has explained that:

> In order to establish a prima facie case of racial discrimination based upon a failure to promote, the plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied for and was qualified for a promotion, (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied. Alternatively, a plaintiff can establish a prima facie case by presenting direct evidence of discriminatory intent. . . . In direct evidence cases, once a plaintiff shows that the prohibited classification played a motivating part in the employment decision, the burden of both production and persuasion shifts to the employer to prove that it would have [failed to promote] the employee even if it had not been motivated by impermissible discrimination.

-8-

*Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000) (citations omitted). The first issue to resolve is whether Plaintiff has presented direct or indirect evidence of Defendant's discriminatory intent. Plaintiff proceeds as though his case is based on direct evidence, while Defendant insists that only indirect evidence of discrimination has been put forth.

Direct evidence is that which "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). Plaintiff has cited the deposition testimony of Hunter as to Parrish's alleged statements, as well as Hatchett's deposition testimony regarding what Hunter then relayed to him, to show that there is direct evidence of discrimination in this case. Rather than tackling the multiple levels of hearsay presented by Hatchett's deposition testimony as to what Hunter claims that Parrish said, the Court is able to resolve the direct evidence issue by focusing on Hunter's testimony that Parrish told him that Hatchett was "not the right color" to be promoted to Store Manager. Indeed, Defendant has urged the Court to resolve the failure to promote claim only on the testimony of Hunter rather than on the secondhand testimony of Hatchett due to reliability concerns.[3] (Doc. No. 36 at 3.)

Hunter's deposition testimony that Potluck co-owner Parrish told him that Plaintiff was "not the right color" to be promoted, which Parrish has subsequently denied, constitutes direct, contested evidence of discrimination. No inferences are required to conclude that Hatchett's "color," or race, was a motivating factor behind the decision not to promote him, should the finder of fact determine that Parrish did in fact make the statement. The Court is not compelled

---

[3] Although no objection has been raised, the Court notes Hunter's testimony as to Parrish's statements would appear not to violate the rule the hearsay evidence may not be considered on summary judgment, *see, e.g., Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999). This evidence is non-hearsay, per Federal Rule of Evidence 801(d)(2).

by Defendant's argument that Parrish's alleged statement, which goes on to assert that the store was too dark and needed to be lightened up, could just as well be about the paint in the store being too dark as Plaintiff's race. Hunter's allegation is that Parrish said that Hatchett, an African-American, was "too dark" to be promoted to Store Manager, not simply that the store was "too dark."

No inferences are necessary to ascertain an alleged improper motive because the statement allegedly made in this case is specific to Plaintiff's personal status as a member of a protected class, and is also specific as to the adverse employment action taken (the decision not to promote). The cases Potluck cites do not detract from this conclusion. For example, this is not a case like *Rowan v. Lockheed Martin Energy Systems*, where the plaintiffs' evidence of age discrimination, found not to be direct, was general commentary within company management about a need to lower the average age of the workforce, 360 F.3d 544, 548 (6th Cir. 2004)— rather, Parrish's alleged statement was in reference only to Plaintiff, his protected status, and the specific promotion he sought. Although Potluck claims that *Blair v. Henry Filters, Inc.*, stands for the proposition that a supervisor's removal of an employee from an account because he was "too old" was *not* evidence of direct discrimination, this is simply incorrect and misleading: the Sixth Circuit found that the statement *was* direct evidence of removal from the account on the basis of age, but *was not* direct evidence of the unlawful conduct actually alleged in the plaintiff's complaint—discriminatory termination. 505 F.3d 517, 524-25 (6th Cir. 2007). Indeed, *Blair* supports this Court's conclusion that Parrish's alleged statement that Plaintiff was "too dark" for the promotion he specifically alleges he was unlawfully denied is a form of direct evidence, just as the "too old" comment in *Blair* was direct evidence regarding removal from the account.

As such, the Court finds that direct evidence has been put forth by Plaintiff and that its veracity is contested by Defendant, creating a genuine dispute of material fact when the facts are viewed in favor of either party: if Parrish did make the alleged statement, then Plaintiff has established direct evidence of an unlawful motive and Defendant is not entitled to judgment; if Parrish did not make the statement, then Plaintiff is not entitled to judgment on the direct evidence theory he emphasizes.

Our analysis must now turn to the next phase of the direct-evidence analysis described in *Nguyen*, in which "the burden of both production and persuasion shifts to the employer to prove that it would have [failed to promote] the employee even if it had not been motivated by impermissible discrimination." 229 F.3d at 563. "[T]he defendant in a direct evidence case has the burden to show that its stated reason for acting against the plaintiff was not pretextual." *Erwin v. Potter*, 79 F. App'x 893, 899 (6th Cir. 2003).

Potluck has asserted evidence intended to show that Hatchett would have been denied the promotion despite its alleged impermissible racial motive to combat a direct evidence theory. Initially, Defendant claimed in its filings that Hatchett's felony conviction disqualified him for the job, such that he would have been denied the promotion regardless of Parrish's comments. (Doc. No. 16 at 17, Doc. No. 20 at 6.) Then, in a later filing, Defendant claimed that "several reasons, including [Hatchett's] felony conviction, problems with his visuals, anger management issues and the lack of recommendation from the Regional Manager" contributed to the decision not to promote, "regardless of any discriminatory animus." (Doc. No. 36 at 8.) Plaintiff responded to these first filing that the criminal history justification, based in the Seavers affidavit, was "false and illegitimate" because it differed so greatly from the dominant reasons proffered by Parrish and Gallatin in their earlier depositions—that Hunter had told them Hatchett

"was not ready" for a promotion. (Doc. No. 19 at 17-18.) Plaintiff also pointed out that Seavers did not become a Regional Manager until August 1, 2008, well after many of Plaintiff's requests to be promoted, and that even in this position he does not have the authority to promote at Potluck (only Parrish and Gallatin do), rendering illegitimate the substance of his affidavit. *Id.* at 19. Plaintiff urges the Court that Defendant's proffered reasons could only be perceived by a reasonable jury as pretextual. (Doc. No. 37 at 1-2.)

Again, the parties have created a genuine dispute as to a material fact in this case, rendering the Court unable to grant judgment in favor of either party. It is Defendant's burden to prove by a preponderance of the evidence that Potluck would not have promoted Hatchett despite any unlawful motive, and Defendant has put forth evidence which, if assumed to be true, could meet this standard. However, Plaintiff has seriously called into question the legitimacy of the reasons Defendant has put forth, essentially alleging that Plaintiff fabricated the criminal background justification some time after litigation began and that the shifting of Defendant's reasons for the decision are indicative of their falsehood. Although the Court will decline to substitute Plaintiff's business judgment for Defendant's, as Potluck urges (Doc. No. 36 at 8 (citing *Rowan*, 360 F.3d at 550)), a reasonable jury might well find that the questions Plaintiff raises prevent Defendant from proving the legitimacy of its decision by a preponderance of the evidence. Thus, there is a very clear factual dispute as to the second prong of the failure-to-promote analysis, too, requiring the Court to deny both parties' motions for summary judgment as to the first of Plaintiff's claims.

### B. *Plaintiff's Disparate Pay Claim*

Disparate pay claims are analyzed using the same employment discrimination framework described above in the discussion of Plaintiff's failure-to-promote claim. *See, e.g., Hughes v.*

*Gen. Motors Corp.*, 212 F. App'x 497, 502 (6th Cir. 2007). Here, however, Plaintiff does not claim to put forth any direct evidence of discrimination (nor has the Court's review of the filings in this case reveal such evidence), and instead simply asserts that he did the same work as the white Store Managers while receiving lower pay. (Doc. No. 19 at 20-21.) In the absence of direct evidence, the Court must apply the *McDonnell Douglas* burden-shifting scheme, under which a *prima facie* case consists of showing:

> 1) he is a member of a protected class; 2) he was qualified for his job and performed it satisfactorily; 3) despite his qualifications and performance, he suffered an adverse employment action [disparate pay]; and 4) that he was . . . treated less favorably than a similarly situated individual outside his protected class.

*Hughes*, 212 F. App'x at 502 (quoting *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572-73 (6th Cir. 2001)). Similarly situated persons must be so in "all relevant aspects": they "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Hughes*, 212 F. App'x at 503 (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). If Plaintiff can make out a *prima facie* case, then the burden will shift to Defendant to "articulate some legitimate, nondiscriminatory reason for the [challenged actions]." *Hughes*, 212 F. App'x at 502 (quoting *Johnson*, 215 F.3d at 573).

There is no dispute as to the first two elements of Plaintiff's *prima facie* case. It is clear that Hatchett, as an African-American, is a member of a protected class. Although Defendants have challenged Plaintiff's qualifications and performance as they pertain to his eligibility for a promotion, they do not contest his qualification for the Sales Manager or Selling Manager positions, or the adequacy of his performance. (*See* Doc. No. 20 at 3, Doc. No. 36 at 9-10.) Defendant highlights, however, two "fatal flaws" that pertain to the last two elements of the

*McDonnell Douglas* analysis. Potluck first alleges that Plaintiff has failed to compare himself to similarly situated individuals, because while Plaintiff "had to perform *some* of the duties of the Store Manager while that position was vacant, he did not have all the same responsibilities . . . , because other company managers . . . would step in when such vacancies occurred to take responsibility for various functions normally performed by the Store Manager." (Doc. No. 36 at 9.) Defendant next argues that Hatchett did not suffer an adverse employment action (lower pay) because he had the same duties and was paid the same amount as the other Sales Managers, all white, who worked without a Store Manager above them. *Id.* at 9-10. These arguments go to the third and fourth prongs of Plaintiff's *prima facie* case—whether he did in fact suffer an adverse employment action, and whether he was treated less favorably than similarly situated outside of his protected class.

The Court must agree with Defendant that Hatchett has failed to put forth adequate facts either to entitle him to judgment on this claim or to allow him to survive Defendant's Motion. First, while Hatchett asserts that he did the work of a Store Manager when he was a Sales Manager in Potluck's stores that did not have an official Store Manager, Defendant rejects this claim and Hatchett's factual allegations fail to support his assertion. Plaintiff has not provided the Court with job descriptions or other evidence of the duties and responsibilities of these nominally different positions that would allow a fact-finder to determine that they were essentially the same (when no official Store Manager was in place), and has only highlighted the set of tasks that he personally performed as a Sales Manager operating without a Store Manager. Although Plaintiff cites Parrish's, Gallatin's, and Hunter's deposition testimony for support, the Court's review of this material shows only that these individuals agree that Hatchett worked without a Store Manager above him at some times, and that this meant more responsibility for

-14-

Hatchett and other managers. (Gallatin Dep. 52, 63-64, 95-96; Hunter Dep. 209-13; Parrish Dep. 77-78, 83-85.) The fact alone, however, that Hatchett performed the role of Sales Manager without a Store Manager above him is not evidence that his work was the same as that of a Store Manager, even if it did require him (and others) to take on additional responsibilities. Plaintiff's evidence, even when taken as true, shows the Court what work he did, but it does not show the Court whether this work was the same as what would be expected of a Store Manager. As such, Plaintiff's primary theory of disparate pay must fail: he has not shown that he suffered an adverse employment action by being paid less than those who did the same work as he did, and he has not shown that he was in fact similarly situated to those white employees who officially held the title of Store Manager. *See Hill v. Nicholson*, 383 F. App'x 503, 509 (6th Cir. 2010) (finding that plaintiff failed to establish that he was similarly situated to another employee; despite plaintiff's testimony that his and the other employee's facially different positions had the same job descriptions, he failed to provide evidence as to the content of the job descriptions and the quantity of work each required).

Second, as Defendant points out, there were periods in which Hatchett was not the only Sales Manager who operated without a Store Manager above him. Indeed, these would seem to be the employees with whom his situation could truly be compared. Defendant correctly asserts that Plaintiff has not advanced an argument that non-minority Sales Managers in precisely the same position he was in (of which there appear to have been three at one point, *see* Hatchett Dep. 129-30) were paid differently. (Doc. No. 36 at 11.) Again, therefore, Plaintiff has not put forth evidence that he was treated less favorably to similarly-situated individuals outside of his protected class, such that Defendant is entitled to judgment on this claim as a matter of law.

*C. Plaintiff's Constructive Discharge Claim*

To constitute a constructive discharge, an employer's actions must: (1) deliberately create intolerable working conditions, as perceived by a reasonable person; with (2) the intention of forcing the employee to quit; and (3) the employee must actually quit. *Moore v. KUKA Welding Sys.*, 171 F.3d 1073, 1080 (6th Cir. 1999). This analysis requires considering "both the employer's intent," which "can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions," and "the employee's objective feelings." *Id.* Because Hatchett did in fact quit his employment at Potluck, only the first two elements of the analysis are in question.

The bases of Plaintiff's constructive discharge claims are several: Hatchett highlights that he was not promoted to Store Manager but did the work of Store Manager; that his Sales Manager position was eliminated and his pay was reduced from $45,000 with bonuses to $6,000 with commissions as Selling Manager; that a Caucasian from outside the company was made a Store Manager at the same time Hatchett's position was altered; and that he was told the reason he was not promoted was his race. (Doc. No. 19 at 21.) The posture of Plaintiff's filings is defensive, seeking to survive Defendant's Motion rather than requesting that summary judgment be granted in his favor. Plaintiff alleges that a reasonable fact-finder could find that Defendant created these conditions with the intent of forcing Hatchett to quit, emphasizing the foreseeability standard above. *Id.* He also notes that the Sixth Circuit has found that along with other factors, a defendant's treatment of some employees more favorably than the plaintiff "could lead [a plaintiff] to believe that she was not wanted there." *Logan v. Denny's, Inc.*, 259 F.3d 558, 573 (6th Cir. 2001). In terms of his own feelings, Hatchett cites his own deposition testimony, in which he claimed that he felt "forced out" and "not wanted or appreciated" because of the refusal to promote him while others (whites) became Store Manager, and that he felt it was

"very, very, very embarrassing to know that someone does not believe in you, not because you're not doing a good job but simply because you're a certain race." (Doc. No. 19 at 22.)

Defendant argues that the constructive discharge claim must fail because the standard for proving constructive discharge is high—it is not sufficient to show that a Title VII violation has occurred (citing *Yates v. Avco Corp.*, 819 F.2d 630, 637 (6th Cir. 1987)), and the plaintiff must prove that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign" (quoting *Smith v. Henderson*, 376 F.3d 529, 533-34 (6th Cir. 2004)). (Doc. No. 16 at 18.) Defendant points to the fact that Plaintiff was only told once that he was not promoted because he was black, and that nothing in his working environment changed after he heard this. *Id.* Further, Defendant argues, Hatchett continued to work at Potluck for five more months, which would not be the reasonable action of a person who is constructively discharged. *Id.* As to the change in Hatchett's position at Potluck, Defendant asserts that the elimination of the Sales Manager position was a financial decision that had nothing to do with race, and Plaintiff's unhappiness with the decision does not support a claim of constructive discharge. *Id.* at 19.

Defendant argues in its subsequent filing that Plaintiff's claim is based "almost entirely" on Potluck's failure to promote him, and Defendant directs the Court to a recent case from this district on this point. There, Judge Trauger explained that a plaintiff "cannot establish a constructive discharge by claiming, without more, that [her] employer's 'failure to promote [her] to what [she] perceives as [her] rightful position created intolerable work conditions.'" *Beard v. Robertson Cnty. Bd. of Educ.*, No. 3:08-cv-00829, 2010 WL 148413, at *4 (M.D. Tenn. Jan. 12, 2010) (quoting *Gold v. FedEx Freight E., Inc. (In re* Rodriguez), 487 F.3d 1001, 1011 (6th Cir. 2007)). Defendant also highlights that "'an employee's concern of little chance of future

advancement does not establish a constructive discharge.'" *Wagner v. Novartis Pharm. Corp.*, 565 F.Supp.2d 940, 946 (E.D. Tenn. 2008) (quoting *Bielert v. N. Ohio Props.*, 863 F.2d 47, at *5 (6th Cir. 1988)).

The Sixth Circuit recently stated that it considers the following factors, "singly or in combination," when determining whether an employee was compelled to quit: "(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Ross v. Pfizer, Inc.*, 375 F. App'x 450, 457 (6th Cir. 2010) (quoting *Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001)).

Here, Hatchett has put forth evidence, if taken as true, that might fall into a number of these categories: he was told by a Regional Manager that he would not be promoted because the company's co-owner thought he was the wrong color (which any reasonable person might find "very embarrassing" to learn, as Hatchett did); his salary was drastically cut when his position was eliminated and he became a Selling Manager, and the terms of his employment also became less favorable (moving to a commission-driven compensation system); and while the latter changes occurred, allegedly for financial reasons, another white person was hired to be a Store Manager. Although Hatchett continued at Potluck for several months after speaking with Hunter about the reason he was not promoted, it is notable that he quit within a month of being made Selling Manager. While Defendant claims that the decision to eliminate the Sales Manager position was purely financial and had nothing to do with race, Plaintiff has averred (and Defendant has not contested) that only he and another African-American employee were affected

by the decision. These facts come in addition to Hatchett's claim that he was in fact denied a promotion on the basis of his race in violation of Title VII, a claim for which he has produced adequate evidence to proceed to trial. This is not a case, such as *Beard*, where Plaintiff has alleged "without more" that he was constructively discharged because he was not promoted, or where, as the point was made in *Wagner*, his low prospects for advancement are the basis for the constructive discharge claim.

From these facts, a reasonable jury could find that Defendant deliberately created intolerable conditions, because of which it was be foreseeable that Hatchett would feel forced to resign. As such, the Court must deny Defendant's Motion on the constructive discharge claim.

### IV. CONCLUSION

For the reasons stated below, Defendant's Motion is **GRANTED in part**, as to Plaintiff's disparate pay claim, and **DENIED in part**, as to Plaintiff's failure to promote and constructive discharge claims. Plaintiff's Motion is **DENIED**.

It is so ORDERED.

Entered this the \_\_\_11th\_\_\_ day of March, 2011.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT